UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FERNANDO C. GRIFFITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:23-cv-00041-JPH-MJD |
| | ) |
| INDIANA DEPARTMENT OF | ) |
| CORRECTION, | ) |
| HEATHER MILLS, | ) |
| BRENDA HINTON, | ) |
| FRANK VANIHEL, | ) |
| KEVIN GILMORE, | ) |
| MARZKE, | ) |
| MODROW, | ) |
| GAPSKE, | ) |
| | ) |
| Defendants. | ) |

**ORDER SCREENING COMPLAINT, SEVERING MISJOINED CLAIMS, AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff Fernando Griffith is a prisoner currently incarcerated at Miami Correctional Facility ("Miami"). Represented by counsel, he filed this action under 42 U.S.C. § 1983 and state law, alleging that he was denied access to the courts, denied adequate medical treatment, retaliated against for engaging in protected First Amendment activity, and deprived of his personal property. Because Mr. Griffith is a "prisoner" who has sued government defendants, the Court assesses "whether joinder is proper under Rule 20 before considering the merits" of the claims as required by 28 U.S.C. § 1915A. *Dorsey v. Varga*, 55 F.4th 1094 (7th Cir. 2022).

1

### I. Screening Standard

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### II. The Complaint

Mr. Griffith names eight defendants in his complaint: (1) the Indiana Department of Correction ("IDOC"); (2) Heather Mills; (3) Brenda Hinton; (4) Frank Vanihel; (5) Kevin Gilmore; (6) Correctional Officer Marzke; (7) Correctional Officer Modrow; and (8) Grievance Specialist Gapske. He seeks money damages, injunctive relief, and an award of fees and costs. He sets forth his allegations in six counts, which the Court summarizes as follows:

**A.  Count I: First Amendment Denial of Access to Courts—Defendants Mills and Hinton**

Since 2004, Mr. Griffith has been engaged in litigation against the State of Indiana seeking post-conviction relief from a criminal conviction. In Cause No. 41C01-0405-PC-000001, both Mr. Griffith and the State sought summary

judgment. The state court declined to enter summary judgment as to eight issues and held three evidentiary hearings. On January 26, 2021, the state court entered an Order directing the parties to file proposed Findings of Fact and Conclusions of Law within 30 days.

Defendants Mills and Hinton worked in the law library at Wabash Valley Correctional Facility ("Wabash Valley"), where Mr. Griffith was incarcerated. On February 5, 2021, Mr. Griffith asked Ms. Mills and Ms. Hinton to add him to the Wabash Valley deadline list, which reserves time in the law library for inmates with upcoming filing deadlines. During the 30-day period that Mr. Griffith had to submit his proposed Findings of Fact and Conclusions of Law, Ms. Mills and Ms. Hinton refused to add him to the list on more than one occasion. During that time period, they also interfered with his ability to access the law library during the times he was placed on the deadline list. They cut short his scheduled time in the library or refused him access to digital copies of the exhibits from his criminal trial.

Mr. Griffith received two extensions of time from the state court, but Ms. Mills and Ms. Hinton continued to interfere with his access to the law library. As a result, Mr. Griffith could not timely complete and file his proposed Findings of Fact and Conclusions of Law. Eventually, the state court entered an order on summary disposition in which it adopted the State's uncontested proposed Findings of Fact and Conclusions of law, thereby denying Mr. Griffith's petition for post-conviction relief.

Mr. Griffith intended to file a motion to correct error to address certain inaccuracies in the state court's order. He had 30 days to do so and asked Ms. Mills to place him on the deadline list. Ms. Mills confirmed Mr. Griffith's pending deadline, but she refused to place him on the deadline list and interfered with his ability to use the law library when he was on the deadline list. As a result, Mr. Griffith could not file his motion to correct error until 5 days after the deadline. The motion was denied because it was not timely filed.

### B. Count II: First Amendment Retaliatory Transfer—Defendants Vanihel and Gilmore

Defendant Vanihel was the warden of Wabash Valley. Defendant Gilmore was a deputy warden at Wabash Valley. Between February and October 2021, Mr. Griffith filed numerous grievances about his inability to access his own legal materials, get outside legal materials or assistance, and use Wabash Valley's law library. The grievances were all denied. On more than one occasion in 2021, Mr. Griffith threatened legal action against Wabash Valley staff for the continued deprivation of his right to access the courts. In retaliation for filing such grievances and making threats of litigation, Warden Vanihel and Deputy Warden Gilmore initiated the process of transferring Mr. Griffith from Wabash Valley to Miami. He was transferred on or about October 24, 2021. Miami is more restrictive and dangerous than Wabash Valley.

### C. Count III: State Law Claim for Loss of Property—IDOC

On October 14, 2021, Mr. Griffith was told he would be transferred. He began to pack his belongings but, after 10 minutes, was interrupted by sergeants, who ordered him to place his items on a flat cart to be inventoried and

4

packed by prison custody staff. Mr. Griffith did not have time to inventory and pack personal belongings in his cell. He also did not have time to retrieve a large collection of legal materials stored in Wabash Valley's law library, including audio-visual evidence related to his criminal conviction. He asked one of the sergeants to contact the law library to request that the legal materials be sent to the new facility with the rest of his personal belongings. The sergeant did so and told Mr. Griffith that his belongings and legal materials would be forwarded to his new facility.

Three days later, Mr. Griffith's personal belongings and legal materials were delivered to Miami, but numerous items were missing or damaged. Included among the missing or damaged items were transcripts, discovery responses, briefs, and audio-visual materials from Mr. Griffith's original criminal trial. Mr. Griffith provided notice of the loss and damage to the State. He has tried to mitigate his loss by requesting replacement copies from the state court.

### D. Count IV: First Amendment Retaliation Against Defendants Marzke and Modrow

In late November 2021, Mr. Griffith began a hunger strike to protest his retaliatory transfer, the loss of his property, and his ongoing inability to access the law library. Correctional Officers Marzke and Modrow knew why Mr. Griffith was engaged in a hunger strike. Several days after Mr. Griffith began his hunger strike, Mr. Griffith lost consciousness, fell, and struck his head, causing a lump on the back of his head and a one-inch laceration on his forehead. When he regained consciousness, he saw that he was bleeding from his forehead. He also was dizzy and had an intense headache and blurred vision.

Mr. Griffith sought medical assistance using his cell's intercom for about 10 minutes without a response. Officer Marzke responded but did not call for help. Instead, she taunted Mr. Griffith with comments such as, "fight the power" or "bet you wish you ate, don't you." Dkt. 1 at 12. Mr. Griffith kept pushing his intercom button to seek medical help. Officer Modrow responded but he also refused to get help for Mr. Griffith. He threatened a conduct report for interfering with staff and sarcastically asked Mr. Griffith if he wanted a tray of food. Medical staff were never summoned to help Mr. Griffith. Mr. Griffith's hunger strike was a motivating factor in Officer Marzke's and Modrow's decision to deny him necessary medical care.

### E. Count V: Eighth Amendment Deliberate Indifferent to Serious Medical Needs Against Defendants Marzke and Modrow

Mr. Griffith brings Eighth Amendment claims of deliberate indifference to serious medical needs against Defendants Marzke and Modrow based on the same facts alleged in Count IV.

### F. Count VI: First Amendment Denial of Access to Courts Against Defendant Gapske

Since arriving at Miami, Mr. Griffith has filed no less than 20 administrative grievances related to his conditions of confinement and access to the courts. Grievance Specialist Gapske has failed to respond to the grievances in a timely fashion and has often failed to respond to the grievances at all. Because of that failure to respond, Mr. Griffith has been effectively foreclosed from seeking redress for violations of his constitutional rights.

### III. Claims that Will Proceed in this Action

District courts are encouraged to review complaints to ensure that unrelated claims against different defendants do not proceed in a single lawsuit. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012) (stating "district court should have rejected [plaintiff's] attempt to sue 20 defendants in a single lawsuit raising claims unique to some but not all of them") (citing *Wheeler v. Wexford Health Sources*, Inc., 689 F.3d 680, 683 (7th Cir. 2012)); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011). A plaintiff is not permitted to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Federal Rules of Civil Procedure 18 and 20 guide this analysis. Federal Rule of Civil Procedure 20(a)(2), permits a plaintiff to join defendants in a single action if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." "[M]ere overlap between defendants is not enough." *Thompson v. Bukowski*, 812 F. App'x 360, 363 (7th Cir. 2020).

Once Rule 20 is satisfied, "[a] party asserting a claim to relief as an original claim, . . . may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." Fed. R. Civ. P. 18(a); *UWM Student Assoc. v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) (court must apply Rule 20 before Rule 18). "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

"Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). When a claim includes improperly joined claims, "[t]he court may . . . add or drop a party. The court may also sever any claim against a party." Fed. R. Civ. P. 21. A district court has broad discretion to sever a claim under Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000); *see also Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (reviewing district court's decision to sever the plaintiff's claims for an abuse of discretion). It may exercise that discretion "to sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015) (citing *Gaffney*, 451 F.3d at 442; *Rice*, 209 F.3d at 1016; *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)). To be "discrete and separate . . . one claim must be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal quotation marks omitted).

As the above discussion makes clear, Mr. Griffith is pursuing claims against five separate defendants based on five separate series of events: (1) claims against Ms. Mills and Ms. Hinton for interfering with his ability to litigate his state court post-conviction relief case (Count I) ("Post-Conviction Interference Claims"); (2) retaliatory transfer claims against Warden Vanihel and Deputy Warden Gilmore (Count II) ("Retaliatory Transfer Claims"); (3) state-law property loss claims against the IDOC based on property being lost or damaged when he was transferred to Miami (Count III) ("Property Loss Claims"); (4) claims against Officers Marzke and Modrow based on their actions after he fell during his hunger strike (Counts IV and V) ("Hunger Strike Claims"); and (5) claims against Grievance Specialist Gapske based on the failure to respond to his grievances (Count VI) ("Grievance Interference Claims").

In the Post-Conviction Interference Claims (Count I), Mr. Griffith has adequately alleged that Defendants Mills and Hinton interfered with his right of access to the courts when they interfered with his ability to make various filings after the state court held three evidentiary hearings in connection with his petition for post-conviction relief, and this action shall proceed on those claims. *See In re Maxy*, 674 F.3d 658, 661 (7th Cir. 2012) (plaintiff can state an access to courts claim by alleging that he was prevented from litigating a non-frivolous challenge to his criminal conviction). These claims were chosen because they survive the screening requirement of § 1915A, and they are freestanding claims that do not overlap with any other claims.

### IV. Misjoined Claims

The Retaliatory Transfer Claims (Count II), the Property Loss Claims (Count III), the Hunger Strike Claims (Counts IV and V), and the Grievance Interference Claims (Count VI), however, are brought against separate (and non-overlapping) sets of defendants and do not arise from same transaction, occurrence, or series of transactions or occurrences as the Post-Conviction Interference Claims. Each set of claims relates to a discrete set of events and can be resolved despite the outcome of any of the other sets of claims. As a result, these claims are misjoined and cannot proceed in the same action as the Post-Conviction Interference Claims. As explained, in such a situation, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. Generally, if a district court finds that a plaintiff has misjoined parties, the Court should sever those parties or claims, allowing those grievances to continue in spin-off actions, rather than dismiss them. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

The misjoined claims shall either be severed into new actions or dismissed without prejudice. Mr. Griffith is the master of his complaint and shall be given the opportunity to determine which course is followed. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff). If new actions are opened, Mr. Griffith will be responsible for the filing fee associated with each new case. In addition, he will be required to file an amended complaint for each new case, and the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for each new case. The Court notes that, as currently alleged, the Property Loss

Claims do not fall within this Court's subject-matter jurisdiction because they are state-law claims, and there is no diversity of citizenship. *See* 28 U.S.C. § 1331 (federal-question jurisdiction); 28 U.S.C. § 1332 (diversity jurisdiction). In addition, the Hunger Strike Claims (Counts IV and V), and the Grievance Interference Claims (Count VI), are alleged against employees of Miami Correctional Facility, and the proper venue for such claims is the Northern District of Indiana.

Mr. Griffith shall have through **June 16, 2023**, in which to notify the Court whether he wishes the Court to sever the misjoined claims into new actions and, if so, which of the misjoined claims he wishes to pursue. **If Mr. Griffith fails to so notify the Court by that date, the misjoined claims will be dismissed without prejudice.**

### IV. Conclusion and Service of Process

In summary, the following claims shall proceed in this case: the Post-Conviction Interference Claims against Defendants Hinton and Mills as set forth in Count I. The Retaliatory Transfer Claims, Property Loss Claims, Hunger Strike Claims, and Grievance Interference Claims may only proceed in a separate action. As stated above, Griffith shall have up to and including **June 16, 2023**, to notify the Court whether he wishes the Court to sever any of the misjoined claims into new actions and, if so, which claims he wishes to pursue. If he fails to do so, the misjoined claims will be considered abandoned and dismissed without prejudice.

This summary of claims includes all of the potentially viable claims identified by the Court. All other claims have been dismissed. If Mr. Griffith believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have through **June 16, 2023**, to identify those claims.

Summons were issued to all defendants and they have appeared by counsel. Defendants Heather Mills and Brenda Hinton are directed to answer or otherwise respond to the complaint within **28 days** of the date this Order is issued.

Nothing in this Order prohibits the filing of a proper motion pursuant to Rule 12 of the Federal Rules of Civil Procedure.

**SO ORDERED.**

Date: 5/18/2023

                                                  *James Patrick Hanlon*
                                                  James Patrick Hanlon
                                                  United States District Judge
                                                  Southern District of Indiana

Distribution:

Electronic service to Indiana Department of Correction:
    Heather Mills
    Brenda Hinton
    (All at Wabash Valley Correctional Facility)

All Electronically Registered Counsel