UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| FERNANDO C. GRIFFITH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:23-cv-00041-JPH-MJD ) |
| HEATHER MILLS, BRENDA HINTON, | ) ) ) ) |
| Defendants. | ) |

**ORDER GRANTNG IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Fernando Griffith filed this action under 42 U.S.C. § 1983 alleging that law librarians at Wabash Valley Correctional Facility—Defendants Heather Mills and Brenda Hinton—violated his First Amendment right of access to the courts. Mr. Griffith's complaint, as screened by the Court, alleges that Defendants caused him to miss the deadlines for filing (1) proposed findings of fact and conclusions of law in a state post-conviction proceeding; and (2) a subsequent motion to correct error.[1] Dkt. 8 at 3-4. Defendants have moved for summary judgment. Dkt. [48]. For the reasons below, that motion is **GRANTED IN PART AND DENIED IN PART**.

---

[1] Mr. Griffith's complaint made other claims against other defendants on federal and state law theories, which the Court found in its screening order to be misjoined with the access to courts claims against Defendants Mills and Hinton. Dkt. 8 at 10-11. The Court subsequently dismissed these claims without prejudice. Dkt. 12.

1

# I.
# Standard of Review

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion

2

can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Griffith and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

Mr. Griffith has been in the custody of the Indiana Department of Correction ("IDOC") since 2001, after being convicted of murder. Dkt. 49-1 at 11 (Griffith deposition). He was incarcerated at Wabash Valley until October 2021, when he was transferred to Miami Correctional Facility. *Id.*

Defendant Hinton at all relevant times was the law library supervisor for Wabash Valley, overseeing the two libraries there. Dkt. 49-2 at 10-11 (Hinton deposition). Among other duties, Ms. Hinton supervised the other law librarians at Wabash Valley and responded to inmates' requests and grievances regarding law library usage. *Id.* at 13-15.

Defendant Mills worked at Wabash Valley's north library as a law library supervisor between 2019 and 2021. Dkt. 49-3 at 10 (Mills deposition). In that position she managed correspondence from inmates, supervised the law library clerks, and supervised the inmates when they came into the library. *Id.* at 11.

During the relevant time period, Ms. Hinton was frequently consulted by Wabash Valley law librarians regarding Mr. Griffith's law library usage requests.

3

Dkt. 49-2 at 53. Ms. Mills also generally consulted Ms. Hinton on questions regarding inmates' law library access. Dkt. 49-3 at 24-25.

In early January 2021, Ms. Hinton and Ms. Mills exchanged emails describing Mr. Griffith as a crybaby regarding his law library access requests. Dkt. 59-16.

### B. Post-Conviction Relief Proceedings

In 2004, Mr. Griffith filed a post-conviction relief petition challenging his conviction in Johnson Circuit Court ("the PC Court"). Dkt. 1 at 5; *Griffith v. State*, No. 41C01-0405-PC-000001 (available at mycase.in.gov, hereinafter "PC Docket"). A public defender was appointed for Mr. Griffith, but withdrew her appearance in 2006, so Mr. Griffith continued pursuing post-conviction relief *pro se*. *See* PC Docket entries from 2/16/06 and 5/16/06.

On September 12, 2017, and February 26, 2018, the PC Court entered orders requesting that "in keeping with their concerns regarding institutional safety, the Indiana Department of Corrections personal [sic] at Wabash Valley facility consider the Defendant/Petitioner for 'deadline status' for the duration of these proceedings." PC Docket entries from 9/13/17 and 2/26/18.

On March 20, 2020, the PC Court entered an order granting "summary disposition" in the State's favor on many of the claims raised in Mr. Griffith's petition. PC Docket entry from 3/20/20. The order also, however, ruled that Mr. Griffith was entitled to an evidentiary hearing to address six allegations of ineffective assistance of trial counsel and three allegations of ineffective assistance of appellate counsel. *Id.* Thereafter, the PC Court held evidentiary

hearings on July 27, 2020, September 28, 2020, and January 25, 2021. *See* PC Docket entries from those dates.

At the conclusion of the January 25 hearing, the PC Court gave the parties 30 days to submit proposed findings of fact and conclusions of law. PC Docket entry from 1/26/2021. On February 23, 2021, Mr. Griffith filed a motion for extension of time to file his proposed findings and conclusions; on March 3, the PC Court extended the deadline to March 31. PC Docket entries from 2/23/21 and 3/3/21. On April 6, Mr. Griffith filed a second motion for extension of time, stating that due to a COVID quarantine and other issues, he had only had about 10 hours of law library access since the January 26 hearing. PC Docket entry 1 from 4/6/21. That same date, the PC Court granted an extension to May 1. PC Docket entry 2 from 4/6/21. The PC Court specifically stated that it believed 10 hours was sufficient time for Mr. Griffith to prepare his proposed findings and conclusions. *Id.* It also stated that no further extensions would be granted "absent extraordinary circumstances." *Id.*

The State filed its proposed findings and conclusions on May 28. PC Docket entry from 6/2/21. Mr. Griffith did not file any proposed findings and conclusions.

On June 8, the PC Court entered its findings of fact, conclusions of law, and ultimate order denying post-conviction relief. PC Docket entry from 6/10/21. The order is fifty pages long and contains 324 findings and conclusions. *Id.*

On July 15, the PC Court received a motion to correct error from Mr. Griffith, showing that it was signed and submitted for mailing on July 2, 2021. PC Docket entry from 7/15/21. The PC Court denied the motion as untimely. PC Docket entry from 7/16/21.

Mr. Griffith's attempt to appeal the PC denial was dismissed by the Indiana Court of Appeals because of his failure to timely file a brief. PC Docket entry from 11/2/2022.

### C. Wabash Valley Law Library Procedures

An inmate who wishes to use a Wabash Valley law library in person must submit a written request slip. Dkt. 49-1 at 14. Generally, inmates are allowed two hours per week in the library. *Id.* An inmate may be granted an extra two hours per week if approved to be on "deadline" status. *Id.* To be approved for additional library time on "deadline" status, an inmate must submit "to the law librarian a copy of the court documents that place him on deadline." Dkt. 59-12 at 5 (Wabash Valley library policy).

IDOC policy generally states that inmates must "be provided with the opportunity to have access to . . . the courts to the extent required by statute, . . . .court order, rule, or applicable policy or rule." Dkt. 59-11 at 1.

### D. Mr. Griffith's Law Library Access

At all relevant times, Mr. Griffith had an electronic tablet that he could use in his cell to conduct legal research. Dkt. 59-5 at ¶ 25 (Griffith affidavit). However, the tablet lacked word processing software, making it impossible to cut and paste caselaw or other relevant documents into another document. *Id.* at ¶

6

26. Also, Mr. Griffith had access in his cell to some, but not all, of the paperwork relevant to his PCR case. *Id.* at ¶ 27. He had no access in his cell to electronic exhibits relevant to his case, including VHS tapes of witness interviews and CDs with photographs, which were kept in the law library. *Id.* at ¶¶ 21-22.

After the January 25, 2021, PC hearing, Mr. Griffith repeatedly asked both Defendants, verbally and in writing, for permission to be put on deadline status and to therefore have additional in-person library time before the final deadline of May 1 for submitting proposed findings and conclusions. Dkt. 49-1 at 15, 25-26, 29-32. Defendants admit they received these requests and that placing Mr. Griffith on deadline status would have been justified by the pending deadlines in the PC case and relevant orders from the PC Court. Dkts. 59-6 at 2; 59-7 at 2; 49-2 at 54-55, 57-58, 60-11; 49-3 at 51-52, 55-56, 58-59.

Between February 7, 2021, and May 1, 2021, however, Mr. Griffith was only allowed in the library for only approximately seven or eight "regular" sessions; not only were his deadline status requests repeatedly refused, but he also was left off the list for some of his unit's regular sessions. Dkt. 59-5 at ¶¶ 19-20. By Mr. Griffith's calculations, he only had approximately 11.5 to 13.25 hours of library access during this time frame, when he should have received 48 hours if he had received regular plus deadline library time. Dkt. 60 at 12. Defendants do not dispute this calculation. Dkt. 61 at 5. They also do not argue that limitation of Mr. Griffith's library time was warranted by security or other institutional concerns.

7

Also, while attempting to prepare his proposed findings and conclusions, Mr. Griffith asked Ms. Mills multiples times to view the electronic exhibits related to his case that were stored at the library, including VHS tapes of witness interviews and CDs with photographs, but she never allowed him to do so for reasons that are unclear. Dkts 49-1 at 42; 59-5 at ¶ 23.

### III.
### Discussion

#### A. Access to Courts

"The right to access the court is fundamental and essential to prisoners' ability to vindicate legal rights." *Jones v. Van Lanen*, 27 F.4th 1280, 1287 (7th Cir. 2022) (*quoting Lewis v. Casey*, 518 U.S. 343, 351 (1996)). While "prisons must facilitate [prisoners' exercise of that right] by providing legal assistance", *In re Maxy*, 674 F.3d 658, 660 (7th Cir. 2012) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)), inmates do not have an "abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). As the Supreme Court explained in *Lewis*,

> [t]he mere denial of access to a prison law library or other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed.

*Id.* at 355. So, to prove an access to the courts claim, a prisoner must designate evidence identifying "(1) a non-frivolous, underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense

8

but that is not otherwise available in a suit or settlement." *Jones*, 27 F.4th at 1287 (citations omitted). The Seventh Circuit has also articulated "a two-part test for access-to-courts claims. 'First, the prisoner must prove that prison officials failed to assist in the preparation and filing of meaningful legal papers. Second, he must show some quantum of detriment caused by the challenged conduct of state officials.'" *Lehn*, 364 F.3d at 868 (*quoting Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir. 1995)).

Regardless of how the test is framed, "prisoners must receive that quantum of access to prison libraries—not total or unlimited access—which will enable them to research the law and determine what facts may be necessary to state a cause of action," consistent with the prison's security concerns. *Brooks*, 62 F.3d at 179 (cleaned up). The right of access is not necessarily satisfied by "any time in a law library. . . . The touchstone is 'meaningful' access, not just access." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994). "If restricting access too severely frustrates the pursuit of an independent, non-frivolous legal right, then there is a violation of the right of access to the court." *Huber v. Anderson*, 909 F.3d 201, 210 (7th Cir. 2018).

Mr. Griffith argues that he was denied meaningful access to the courts when: (i) Ms. Mills denied Mr. Griffith access the Evidentiary Materials despite his numerous requests; (ii) Ms. Hinton and Ms. Mills intentionally excluded Mr. Griffith from the WVCF law library, including by leaving him off of the deadline list; and, (iii) Ms. Mills intentionally reduced Mr. Griffith's law library time for reasons unrelated to safety and security.

Defendants do not dispute, at least for summary judgment, that Mr. Griffith "suffered an injury by missing the deadline to file his proposed findings of fact and conclusions of law in his post-conviction relief case." Dkt. 61 at 2. Defendants further "acknowledge that there are disputes of fact as to the intentionality of Defendants' actions." *Id.* And Defendants do not appear to challenge whether Mr. Griffith's position in the PC litigation was potentially meritorious or non-frivolous.

In support of their motion for summary judgment, Defendants argue that Mr. Griffith "had ample access to the law library" and any limitation on access did not negatively impact Mr. Griffith's access to the courts. Dkt. 50 at 11. They further argue that his "inability to timely file his proposed findings of fact and conclusions of law and his motion to correct error was not caused by the actions of defendants; rather it was caused by his failure to present the necessary evidence when he had the opportunity." *Id.* Defendants therefore argue that "they provided [Mr. Griffith] with access to the Courts so that he was not effectively shut out of Court." Dkt. 61 at 2.

Mr. Griffith has designated evidence from which a jury could reasonably find that the limitations imposed by Defendants on Mr. Griffith's ability to use the law library impaired his ability to adequately prepare proposed findings of fact and conclusions of law. His PC case spanned three evidentiary hearings and resulted in a 50-page order addressing nine issues with 324 findings and conclusions. Mr. Griffith states that Defendants allowed him approximately 13 hours in the law library between February 7, 2021, and May 1, 2021, to prepare

10

his proposed findings of fact and conclusions of law. Dkt. 60 at 12. Defendants do not challenge that this amount of time is accurate. Dkt. 61 at 5.

Mr. Griffith argues that during this timeframe, he should have been given approximately 48 hours in the law library had Defendants placed him on "deadline status" as requested. Dkt. 60 at 12. Defendants do not appear to contest that this is the number of hours of law library access Mr. Griffith would have been given had he been on "deadline status". Dkt. 61 at 5-6. Mr. Griffith further states that he was also left off the regular law library list for his housing unit and therefore not even able to access the library during regular hours. Mr. Griffith argues that from this evidence, a reasonable jury could find that he was denied sufficient access to the law library to work on his proposed findings of fact and conclusions of law. Dkt. 60 at 13-14.

While the applicable Wabash Valley and IDOC policies governing law library access may have some probative value at trial, the jury's task will be to decide whether Defendants violated Mr. Griffith's constitutional right of access to the courts, not whether they violated prison policies governing inmates' ability to access the law library. *See Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) ("Section 1983 protects against constitutional violations, not violations of departmental regulation and practices") (cleaned up)*; Courtney v. Butler*, 66 F.4th 1043, 1052–53 (7th Cir. 2023). There is no prescribed formula for determining the number of hours of access to the law library Mr. Griffith needed to adequately prepare his proposed findings of fact and conclusions of law. *Alston*, 13 F.3d at 1041 (access must be "meaningful"). So, the question is

11

whether Defendants allowed Mr. Griffith enough time in the law library to be able to prepare proposed findings of fact and conclusions of law in his PC case within the deadlines established by the PC court.

Defendants' argument that Mr. Griffith could have moved for an additional extension of time with the PC Court to file his proposed findings and conclusions does not show that they are entitled to summary judgment. Defendants cite *Guy v. White*, No. 3:23-cv-835-JTM-JPK, 2024 WL 307581 (N.D. Ind. Jan. 23, 2024) in support of their argument. In *Guy*, the plaintiff/inmate alleged that Miami Correctional Facility officials deprived him of needed library access to respond to a summary judgment motion, which the court granted after he failed to file a response. The court dismissed the complaint at screening, explaining that the plaintiff had failed to allege how or why the lack of library access prevented him seeking a second motion for extension of time to respond to the summary judgment motion. *Id.* at * 2. That's different from the situation presented here where Mr. Griffith had good reason to think that another motion for extension of time with the PC Court would be futile—the PC Court had stated that no further extensions would be granted "absent extraordinary circumstances."

Also, Defendant Mills did not allow Mr. Griffith *any* access to the evidentiary materials from the hearings that needed to review and reference in preparing his work on his proposed findings and conclusions. *Lehn v. Holmes*, 364 F.3d 862, 869-70 (7th Cir. 2004), is instructive. There, the prisoner was incarcerated in Illinois and seeking to challenge a Maryland arrest warrant against him, but the law library did not provide him with any access to legal

12

materials related to Maryland law. *Id.* at 869-70. Finding that the prisoner had a right to challenge the charges against him in Maryland, the Seventh Circuit stated that the "inquiry must be whether a particular prisoner is being denied access to those materials (from the relevant jurisdiction) that are necessary to launch an initial attack." *Id.* at 870. Prison officials were therefore required to "find some way to provide [him] with access to the essential legal materials he needs." *Id.* *See also Hossman v. Spradlin*, 812 F.2d 1019, 1022 n. 3 (7th Cir. 1987) (citing *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975) (prisoners must be given access to documents that are "crucial or essential to a pending or contemplated appeal."); *Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969); *Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973)).

Here, there are contested factual issues as to whether the amount of time that Defendants gave Mr. Griffith in the law library was "meaningful" in the context of his ability to prepare his proposed findings and conclusions. So, Defendants are not entitled to summary judgment as to Mr. Griffith's claim that they interfered with his constitutional right to access to the courts with respect to his proposed findings of fact and conclusions of law in the PC Case. Defendants are, however, entitled to summary judgment as to Mr. Griffith's denial of access to the courts claim related to his motion to correct error. It's undisputed that Mr. Griffith completed a motion to correct error and submitted it for mailing within the applicable deadline. Mr. Griffith has designated no evidence that either Defendant delayed the mailing of the motion, so Defendants

13

are entitled to summary judgment with respect to any claims related to the filing of the motion to correct error.

### B. Qualified Immunity

Defendants argue that they are entitled to qualified immunity. "[Q]ualified immunity shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "To overcome the defendant's invocation of qualified immunity, [a plaintiff] must show both (1) that the facts make out a constitutional violation, and (2) that the constitutional right was 'clearly established' at the time of the official's alleged misconduct." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713 (7th Cir. 2013). This "clearly established" standard ensures "that officials can 'reasonably . . . anticipate when their conduct may give rise to liability for damages.'" *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 (1987)).

To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 583 U.S. at 64 (quoting *Anderson*, 483 U.S. at 641). Although "a case directly on point" is not required, "precedent must have placed

14

the . . . constitutional question beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell v. Kallas*, 936 F.3d 536, 546 (7th Cir. 2019) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quotation marks omitted)).

At the time of the events alleged in Mr. Griffith's complaint, cases from the Supreme Court and Seventh Circuit had clearly established that prisoners "must receive 'that quantum of access to prison libraries—not total or unlimited access—which will enable them to research the law and determine what facts may be necessary to state a cause of action.'" *Brooks v. Buscher*, 62 F.3d 176, 179 (7th Cir. 1995). And while there was no mathematical formula to determine how much library access an inmate must be provided, the cases established it must be "meaningful" in the context of the specific factual situation. *See Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 823); *Alston*, 13 F.3d at 1041. In *Alston*, the Seventh Circuit reversed a district court's dismissal of a prisoner's complaint alleging denial of access to the courts. Specifically, the Seventh Circuit held in part that the district court erred in implying "that the constitutional requirement is met whenever an inmate is given any time in a law library. Not so. The touchstone is 'meaningful' access, not just access." *Id.*

15

It was similarly clear that denying an inmate any "access to the essential legal materials he needs" violated an inmate's right to access the courts. *Lehn*, 364 F.3d at 870. In other words, it was clear that prisoners must be given access to documents that are "crucial or essential to a pending or contemplated appeal." *Hossman v. Spradlin*, 812 F.2d 1019, 1022 n. 3 (7th Cir. 1987) (citing *Bonner v. Coughlin*, 517 F.2d 1311 (7th Cir. 1975); *Sigafus v. Brown*, 416 F.2d 105 (7th Cir. 1969); *Adams v. Carlson*, 488 F.2d 619 (7th Cir. 1973)).

The next step in the qualified immunity analysis is whether a reasonable law librarian could have thought that the access provided by Defendants met constitutional requirements. Mr. Griffith has shown that despite his numerous requests for more time, he was given approximately 12 total hours of library time over three months to prepare findings of fact and conclusions of law from an evidentiary hearing that spanned multiple days and resulted in a 50-page court order containing 324 findings and conclusions. No reasonable law librarian could have thought that, under the circumstances, 12 hours' law library access over three months was "meaningful" in the context of Mr. Griffith's need to prepare the post-PC hearing proposed findings of act and conclusions of law. Also, a defendant in such case "'bear[s] the burden of proving the adequacy of the means provided.'" *Id.* (quoting *Shango v. Jurich*, 965 F.2d 289, 292 (7th Cir. 1992)).

Mr. Griffith further challenges the categorical denial of access to the exhibits filed by the state in support of its proposed findings of fact and conclusions of law. Mr. Griffith cites *Lehn*, discussed in Part III(A) of this Order,

16

which held there was a potential violation of an inmate's right of access to the courts, where he was deprived of access to legal materials needed to challenge an arrest warrant. *Lehn*, 364 F.3d at 869-70. Here, the physical evidence submitted by the State, which consisted of VHS tapes of witness interviews and CDs with photographs, was available to Mr. Griffith only at the law library. This evidence from the evidentiary hearing was part of the "basic materials" that Mr. Griffith needed to prepare his post-hearing brief. No reasonable law librarian could have thought that the State's evidence was not "essential legal materials" to which Mr. Griffith needed access to complete his proposed findings of fact and conclusions of law. So, no reasonable law librarian could have though it was constitutionally permissible to completely deny Mr. Griffith access to those materials between February 7, 2021, and May 1, 2021. Dkt. 59-5 at 4 ¶ 23. *See Huber v. Anderson*, 2019 WL 4854986, at *7 (E.D. Wis. Oct. 1, 2019) (denying summary judgment based on qualified immunity to officials who limited probationer's access to internet-based research because of established caselaw, including *Lehn*, holding that officials must provide "meaningful access to legal research resources"); *cf. Steele v. Knight*, 2015 WL 1209923, at *7 (S.D. Ind. Mar. 16, 2015) (concluding prison officials were entitled to qualified immunity on access-to-courts claim, despite temporary closure of prison law library, where unlike Mr. Griffith the plaintiff "never communicated his specific deadlines or the nature of those deadlines to either defendant").

In sum, Defendants Mills and Hinton are not entitled to qualified immunity for limiting Mr. Griffith's library access, and Defendant Mills is not entitled to

17

qualified immunity for completely denying him access to needed evidentiary materials during the time-sensitive period when he needed to draft and file his proposed PC findings and conclusions.[2]

## IV. Conclusion

Defendants' motion for summary judgment is **GRANTED IN PART** as to any claims related to the filing of Mr. Griffith's motion to correct error and **DENIED IN PART** as to his inability to file proposed findings and conclusions. Dkt. [48]. The Magistrate Judge is requested to conduct further proceedings regarding settlement and preparation for trial.

**SO ORDERED.**

Date: 1/30/2026

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

Magistrate Judge Dinsmore's Chambers

---

[2] As discussed in Parts II(D) and III(A) of this Order, only Defendant Mills was involved in limiting Mr. Griffith's access to evidentiary materials.

18